UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


TORIANO JOHNSON,

          Petitioner,

                                  NO. 2:07-CV-10846
                                  VICTORIA A. ROBERTS
          v.                          UNITED STATES DISTRICT JUDGE

ANDREW JACKSON,

          Respondent.

_____/


**OPINION AND ORDER DENYING PETITION FOR A WRIT OF HABEAS CORPUS**

Toriano Johnson ("Petitioner"), a state prisoner currently[1] confined at the

Newberry Correctional Facility in Newberry, Michigan, has through counsel filed an

application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  A jury in Wayne

County, Michigan convicted Petitioner of three counts of first-degree felony murder,

MICH. COMP. LAWS § 750.316(1)(b), assault with intent to commit murder, MICH. COMP.

LAWS § 750.83, armed robbery, MICH. COMP. LAWS § 750.529, first-degree home

invasion, MICH. COMP. LAWS § 750.110a(2), felon in possession of a firearm, MICH.

COMP. LAWS § 750.224f, and felony firearm, MICH. COMP. LAWS § 750.227b.  The state

_____

[1]Petitioner was incarcerated at the Mound Correctional Facility when he originally
filed his petition for writ of habeas corpus; however, he has since been transferred to
the Newberry Correctional Facility.  The proper respondent in a habeas case is the
habeas petitioner's custodian, which in the case of an incarcerated petitioner is the
warden of the facility where the petitioner is incarcerated. Rule 2(a) of the Rules
Governing § 2254 Cases; see also *Edwards v. Johns*, 450 F.Supp.2d 755, 757
(E.D.Mich.2006).  In most cases where a petitioner is transferred to a different facility
after the petition has been filed, the Court would order an amendment of the case
caption.  However, because the Court is denying the petition in this case, it finds no
reason to do so.

trial court sentenced Petitioner to concurrent prison terms of life without the possibility of parole for each of the felony-murder convictions, two-hundred eighty-five months to fifty years for both the assault  and armed robbery convictions, one-hundred forty months to twenty years for the home invasion conviction, thirty-eight months to five years for the felon in possession conviction, and a consecutive term of two years for the felony firearm conviction.  Petitioner alleges that he is entitled to habeas relief because his trial counsel and appellate counsel provided constitutionally deficient assistance, and because the state improperly withheld information.  Because Petitioner's claims are procedurally defaulted and lack merit, this Court **DENIES** the petition for a writ of habeas corpus.

## I.  BACKGROUND

On January 14, 2000, two intruders shot and killed Daniel Devine, Tammy Brenner and Nicholas Manto in Devine's home on Malcolm Street in Detroit.  There were three others in the house at the time who survived: Devine's two-year old son Tyler, Devine and Brenner's five-year old son, Daniel Brenner, and Devine's friend, Howard Wiseman.

Wiseman watched television in the basement when the killings occurred.  When the doorbell rang around one o'clock in the afternoon, Manto, who was in the basement with Wiseman, went upstairs, answered the door and was forced by deadly threats to allow the two intruders into the house.  Manto woke up Devine and Brenner who had been sleeping.  The perpetrators demanded that everyone upstairs lie down on the floor.  The intruders demanded money; Devine gave them $750 but they demanded

2

more and inquired about a safe.  Tyler and Daniel were crying.  One of the intruders slapped Daniel.  Brenner got up off of the floor to protect her son and then one of the perpetrators shot her.  Wiseman testified to hearing one of the intruders say that he had agreed to help in a robbery but had never agreed to any killings and that he wanted his half of the money and left.  The person who left was "light footed."  Next, Wiseman heard more shots and heard Daniel say, "Please don't shoot my daddy again."  The shooter then spoke to Manto and said Manto had seen his face; Wiseman heard two more shots.  The shooter, who according to Wiseman was a "heavy walker," then walked around the house apparently in search of more money before leaving.  Wiseman testified that it seemed as if Devine knew the intruders because he referred to them by name.  Devine was known to sell drugs out of his home.  Wiseman heard Devine refer to one as "T" and the other as "Joe, Joanne, Joan, or something like that."  Wiseman was not aware that the shooter also shot Daniel.

Daniel was shot in the back, which left his right leg paralyzed.  He was transported to St. John's Hospital.  While there, he was cared for by patient care technician Pam DeKiere, among others, and guarded by Detroit police officer Christopher Honore.  Daniel required several surgeries and was hospitalized for weeks.  One morning in February 2000, Daniel, who liked spending time with DeKiere, talked about how his parents had been killed.  This was the first time he had ever spoken about the incident.  DeKiere told the police about her conversation with Daniel.

Officer Honore began guarding Daniel the day he was admitted the hospital in January 2000 and saw him every day.  They had a close relationship.  Following Daniel's statements to DeKiere, Officer Honore talked to Daniel on February 4, 2000.

3

After Honore asked Daniel how his back was feeling, Daniel told Honore that bad men had shot him in the back.  In response to limited questions from Honore, Daniel said that there had been two bad men in the house, they were black and that their names were Tito and Jonas.  Daniel said that Jonas shot his mom twice, Nick twice, his dad once, and that Tito shot Daniel.  Daniel described Tito as dark complected and fat and Jonas as skinny and not as dark as Tito.  Daniel recognized the bad men because he had seen them before at his dad's work.

In July 2000, a local television station aired a segment on the triple homicide as part of the series called "Michigan's Most Wanted."  The broadcast informed the public that police were looking for two suspects in the Malcolm Street triple homicide who go by the nicknames of Tito and Jonas, and asked viewers to provide authorities with information about the suspects.  An anonymous tip named Petitioner as Tito.

Sergeant Arlie Lovier of the Detroit Police Department was a member of an interagency task force responsible for investigating the case.  Lovier testified that when he got the anonymous tip, he obtained Petitioner's address, investigated his possible nicknames and obtained a photo of Petitioner.  Lovier and Officer Honore took Petitioner's photo along with additional photos for a photo lineup with Daniel on July 17, 2000.  On three different occasions with the photos placed in three different orders, Daniel identified Petitioner as the shooter.

Authorities obtained a search warrant for Petitioner's residence.  Lovier testified that investigators located a potato chip can in the ceiling which contained jewelry.  Devine's daughter Denise Paul identified a ring found in the can as belonging to her father.

4

Authorities arrested Petitioner on July 17, 2000.  Special Agent Edward Donovan of the Drug Enforcement Agency, another investigator on the case, questioned Petitioner.  Donovan testified that Petitioner gave three statements.  In the first statement on July 17, 2000, Petitioner said that he did not know Devine and had never been to Malcolm Street.

In Petitioner's second statement on July 18, 2000, he admitted that he knew Devine, had been selling him cocaine, and that Devine's son Daniel knew him as Tito. Petitioner said that on the day of the murders he went to Devine's house after work. When he arrived, Petitioner said that Jamie White, Marvin Hughes and an unidentified third man were already there.  He said he left as Marvin and Jamie pulled out guns and ordered Devine, Brenner and Manto into the kitchen.  Out on the porch, he heard a shot.  Petitioner later changed a portion of this statement to say that he'd seen the little boy get shot, then he left.

Petitioner's third statement was given on July 19, 2000 and was reduced to writing which Petitioner signed.  In this statement, Petitioner stated that on the day of the murders, he went to work early, left early and got back to the neighborhood around 12:30 or 1:30.  He went to Devine's house with White and Hughes.  Hughes ordered Devine, Benner and Manto to lay down in the kitchen.  Petitioner admitted to holding Daniel who started crying for his mom.  Petitioner said his gun went off by accident and Daniel got shot.  Daniel's mother then started screaming and Petitioner admitted that he shot her.  When Petitioner left, he said Hughes was standing over Manto and he heard two shots while leaving.  Petitioner said that he didn't mean for any one to get hurt, that it was an accident, and that he was sorry.

5

Petitioner was charged with three counts of felony murder, one count of assault with intent to murder, armed robbery, first-degree home invasion, possession of a firearm by a felon, and felony firearm.  The state moved to admit the statements Daniel made to DeKiere and Honore while he was in the hospital under the hearsay exception for excited utterances.  Petitioner opposed the motion.  After holding an evidentiary hearing on November 11, 2000, the trial court admitted the statements.  Defense counsel stipulated to Petitioner's status as a felon, but not to the specifics of the conviction.  The parties agreed that Daniel would not have to testify at trial; defense counsel stipulated that if Daniel were to testify, he would identify Petitioner as being one of the shooters.

At the final pre-trial conference on January 26, 2001, defense counsel put on the record that Petitioner claimed that the three statements attributed to him were not made by him.  Tr. (1/26/01), pp. 4-5.  Defense counsel clarified that there was no basis for a suppression hearing, as Petitioner had asked of his lawyer, because Petitioner was not arguing that the statements were involuntary or that the interrogator had failed to give *Miranda* warnings.  *Id.*, p. 4.  Instead, because Petitioner claimed that he did not make the statements; whether he did would be a question for the jury.  *Id.*, p. 5.

On May 17, 2001, the jury convicted Petitioner on all counts.  During sentencing on June 6, 2001, the court granted defense counsel's request to withdraw.  Tr. (5/17/01), p. 5.  Petitioner waived his right to an attorney and proceeded to represent himself at sentencing.  *Id.*, pp. 5-9.  During his opportunity to address the court, Petitioner stated that he "didn't do this.  I ain't do it.  If my attorney would have did what he was supposed to do, he'd prove that I wasn't even there."  *Id.*, p. 19.

6

After sentencing, Petitioner moved for a new trial based on arguments that trial counsel was constitutionally ineffective and that the prosecutor engaged in misconduct that affected the fairness of the trial.  Specifically, Petitioner faulted trial counsel for failing to raise an alibi defense because Petitioner claimed to have been at work when the murders occurred.  Petitioner attached what he asserted was his time sheet that established that he was at work on January 14, 2000.  The time sheet was hand written, was unsigned and did not contain anything that identified the employer.  Counsel made an oral request for a *Ginther* hearing[2].  After taking argument on March 17, 2002, the court denied the request for a new trial and a *Ginther* hearing.

On March 29, 2002, Petitioner filed a motion with the Michigan Court of Appeals for a remand for a *Ginther* hearing regarding counsel's failure to investigate and present an alibi defense.  Petitioner signed two affidavits in support, in which he alleged that he informed his trial counsel of the defense.  The Court of Appeals denied the motion on May 3, 2002.

In Petitioner's direct appeal, he raised four claims:  1) ineffective assistance of trial counsel for failure to investigate and present alibi defense; 2) abuse of discretion by the trial court for admitting Daniel Brenner's statements; 3) abuse of discretion by the trial court for admitting photographs of the victims; and 4) prosecutorial misconduct. Petitioner filed a "supplemental brief" that challenged the waiver of his right to counsel during sentencing.  The Michigan Court of Appeals affirmed his conviction.  *People v. Johnson*, No. 237012, 2003 WL 462387 (Mich. Ct. App. Feb. 21, 2003) (unpublished).

---

[2]In Michigan, a hearing on a claim of ineffective assistance of counsel is known as a *Ginther* hearing.  *See People v. Ginther*, 390 Mich. 436 (1973).

7

The Michigan Supreme Court denied Petitioner's application for leave to appeal. *People v. Johnson*, 469 Mich. 865 (2003).

Petitioner filed a post-conviction motion for relief from judgment pursuant to Michigan Court Rule 6.502, raising the same claims he asserts in this application for a writ of habeas corpus.  In a one-page form order, the trial court denied the motion on December 20, 2004.  *People v. Johnson,* No. 00-8988  (Wayne County Cir. Ct. Dec. 20, 2004).  Petitioner filed a delayed application for leave to appeal with the Michigan Court of Appeals raising the same claims. The court denied leave to appeal for "failure to meet the burden of establishing entitlement to relief under MCR 6.508(D)."  *People v. Johnson*, No. 267343 (Mich. Ct. App. July 10, 2006) (unpublished).  Petitioner filed an application for leave to appeal with the Michigan Supreme Court, which it denied for "failure to meet the burden of establishing entitlement to relief under MCR 6.508(D)." *People v. Johnson*, 477 Mich. 947 (2006).

Petitioner now seeks the issuance of a writ of habeas corpus on the following grounds:

I.    Trial counsel was constitutionally ineffective for failing to:

- A.    Investigate and present an alibi defense;
- B.    Challenge the admission of Petitioner's statements;
- C.    Challenge the admission of the results of the photo line up;
- D.    Object to the admission of Petitioner's prior conviction;
- E.    Excuse a juror for cause;
- F.    Object to testimony about an anonymous tip and about irrelevant and prejudicial information; and, for
- G.    Agreeing to stipulate to testimony of the young victim so the child would not have to testify.

II.    Appellate counsel was constitutionally ineffective for failing to adequately raise the ineffectiveness of trial counsel as an issue on direct appeal.

8

III.    The state failed to turn over exculpatory and impeaching evidence in violation of *Brady*.

## II.  STANDARD OF REVIEW

Review of this case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  Pursuant to the AEDPA, a petitioner is entitled to a writ of habeas corpus only if he can show that the state court's adjudication of his claims on the merits-

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  Simply stated, under § 2254(d), a petitioner must show that the state court's decision "was either contrary to, or an unreasonable application of, [the Supreme] Court's clearly established precedents, or was based upon an unreasonable determination of the facts."  *Price v. Vincent*, 538 U.S. 634, 639 (2003).

A state court's decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts."  *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).  A state court's decision is an "unreasonable application of" clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  *Id.*

9

"[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 409. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. "Rather, it is the habeas applicant's burden to show that the state court applied [Supreme Court precedent] to the facts of his case in an objectively unreasonable manner." *Woodford v. Visciotti*, 537 U.S. 19, 25 (2002).

## III. DISCUSSION

### A. Failure of Trial Counsel to Investigate or Raise Alibi Defense

In his first claim (Claim I.A), Petitioner argues that trial counsel was constitutionally ineffective for failing to investigate and raise an alibi defense. The Michigan Court of Appeals rejected this claim:

> Although defendant asserts that he was at work when the offenses were committed, the record reflects that defendant gave three separate statements to the police, each acknowledging his presence at the crime scene at the time of the offenses. There is no indication in the record that defendant ever mentioned a possible alibi defense before trial, or that he notified counsel of a potential alibi defense. It was not until after he was convicted that defendant submitted a "time sheet" purporting to show that he was a work when the offenses were committed. Even then, however, the time sheet defendant submitted was hand-written, did not identify an employer or bear any other company information, and was not signed by either defendant or an employer. Further, defendant never submitted an affidavit from the employer who he claims could have testified regarding his presence at work, or who could have verified the legitimacy and accuracy of the unsigned time sheet. Under the circumstances, we find that defendant failed to demonstrate a plausible alibi defense. See *People v. Leonard*, 224 Mich App 569, 592-593; 569 NW2d 663 (1997). Thus, defendant has not shown that counsel was ineffective.

10

*People v. Johnson*, 2003 WL 462387 at *2.

The Sixth Amendment guarantees the accused in a criminal proceeding the right to the effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland* established a two-part test for evaluating claims of ineffective assistance. First, a defendant must show that counsel's performance was deficient by demonstrating that "counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687-88.  The second prong of *Strickland* examines whether the defendant was prejudiced by counsel's deficient performance. To establish prejudice, the "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

The failure to call an alibi witness has served as grounds for finding ineffectiveness of counsel. *See, e.g., Matthews v. Abramatys*, 319 F3d 780, 789-790 (6th Cir. 2003); *Blackburn v. Foltz*, 828 F.2d 1177, 1182-1183 (6th Cir. 1987).  As Respondent points out, these cases involved situations where the lawyer knew about alibi witnesses but failed to call them.  These cases do not control when the issue is a factual question of whether the lawyer was aware of alibi witnesses. *Bigelow v. Williams*, 367 F.3d 562, 570-571 (6th Cir. 2004) (where trial counsel was unaware of potential alibi witnesses no ineffectiveness of counsel for failure to call and petitioner not entitled to habeas relief)

In this case, the Michigan Court of Appeals found that Petitioner did not notify his lawyer about a potential alibi defense. *People v. Johnson*, 2003 WL 462387 at *2.  On habeas review, this Court presumes that this factual finding is correct and Petitioner

11

bears the burden "of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1); *Mitchell v. Mason*, 325 F.3d 732, 737-38 (6th Cir.2003).

Petitioner contends that he has evidence that he informed his attorney of his alibi defense before and during trial.  Petitioner executed two affidavits that he submitted to the Michigan Court of Appeals as an attachment to his Motion to Remand for a *Ginther* hearing.  In the affidavits, he alleges that he informed his trial counsel of his alibi that he was at work on the day in question.  Petitioner also submitted an affidavit executed by his mother that was attached to his motion for relief from judgment that asserted that she too informed Petitioner's attorney of Petitioner's alibi.  Because the Michigan Court of Appeals denied Petitioner's request for a remand and the trial court denied Petitioner's motion for relief from judgment without a hearing, there is no testimony from trial counsel Robert Slameka as to whether or not he was aware of a potential alibi defense.

Respondent contends that even assuming without conceding that Petitioner informed his attorney of an alibi defense, the decision not to pursue it was harmless because Petitioner's alibi defense is implausible.  Petitioner relies upon a time sheet (Petition, App. A) and two affidavits from fellow employees at DBI Business Interiors and represents them as evidence of "Petitioner's <u>presence at work</u>" on the date and at the time of the murders (Petition, App. G).  Petition, pp. 25-26 (emphasis supplied).  The Michigan Court of Appeals found that the time sheet alone was inadequate to support an alibi defense.  *People v. Johnson*, 2003 WL 462387 at *2.  The affidavits are meant to validate the time sheet.

12

James Sobanski worked at DBI during 2000.  He states in the affidavit that the time sheet is one that was used by DBI.  He further states that he validated Petitioner's time sheet as manager of a work detail of which Petitioner was a part.  He verifies that Petitioner was paid for the hours worked on the time sheet, which included the time frame of the murders in this case.  However, in contrast to what Petitioner asserts the affidavit says, Sobanski took affirmative steps to make clear that he is only verifying that Petitioner was paid for these hours.  He crosses out the type-written word "worked" and writes in by hand that Petitioner was "paid" for these hours.  Sobanski also writes in by hand "not always worked full 8 hrs but still paid 8 hr."  Sobanski does not swear -- in fact goes out of his way not to swear -- to Petitioner's presence at work on the day and time of the murders.

Similarly, Zachary Blanchard also verifies that Petitioner was paid for working on January 14, 2000.  He verifies that Petitioner was a member of a work detail that he supervised, but nowhere in the affidavit does Blanchard state that he saw Petitioner at work that day.

In addition to the problems with the Sobanski and Blanchard affidavits, a critical factor in the court's analysis is what Petitioner admitted in the statements he made to investigators[3].  In his second statement, he admitted to being at Devine's home after work.  Tr. (5/16/01), p. 31.  In his third statement, he stated that on the day in question, he went to work early and left early and got back to the neighborhood around 12:30 or 1:30.  Id., p. 37.  The admissions are consistent with the Sobanski and Blanchard

---

[3]The court concludes below that there was no error or ineffective assistance of counsel in admitting Petitioner's statements.

affidavits.  In light of these admissions, a decision not to pursue an alibi defense would be reasonable and would not amount to deficient performance.

Further, any failure to investigate was harmless because Petitioner lacks evidence to support his claim that he was at work at the time of the murders.  The decision of the Michigan Court of Appeals was not contrary to federal law, did not involve an unreasonable application of clearly established Supreme Court precedent or an unreasonable determination of the facts in light of the evidence presented.  Petitioner is not entitled to habeas relief on this claim.

### B.  Procedural Default

Respondent argues that the remaining six (Claims I.B through I.G) of Petitioner's seven ineffective assistance of trial counsel claims are procedurally defaulted because he raised them for the first time in his post-conviction motion for relief from judgment and has not shown cause for failing to raise these issues in his appeal of right, as well as prejudice, as required by Michigan Court Rule 6.508(D)(3).  This argument applies with equal force to Petitioner's Claim III.  Petitioner contends that the ineffectiveness of his appellate counsel (Claim II) is cause for his procedural default.  Petitioner could not have procedurally defaulted this ineffective assistance of appellate counsel claim because state post-conviction review was the first opportunity that he had to raise it. *See Hicks v. Straub*, 377 F.3d 538, 558 n. 17 (6th Cir. 2004); *Johnson v. Warren,* 344 F.Supp.2d 1801, 1089 n. 1 (E.D. Mich. 2004).  The court will discuss the merits of this issue (Claim II) below.  Petitioner's remaining ineffectiveness of trial counsel claims (Claims I.B through I.G) and Claim III are subject to procedural default analysis.

If a petitioner failed to present federal habeas claims to the state courts in

14

accordance with the state's procedural rules, such claims are procedurally defaulted and federal habeas review is barred. *Simpson v. Jones*, 238 F.3d 399, 406 (6th Cir. 2000) (citations omitted); *see also Burroughs v. Makowski*, 282 F.3d 410, 413 (6th Cir. 2002) (procedural default is based upon "independent and adequate state ground doctrine" that bars federal habeas review when state court declines to address prisoner's federal claims because of failure to meet state procedural requirement) (citing *Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991)).

To determine whether a petitioner has procedurally defaulted a federal claim in state court, a federal habeas court must determine whether:

> 1) the petitioner failed to comply with an applicable state procedural rule;
> 2) the last state court rendering judgment on the claim at issue, in fact enforced the applicable state procedural rule so as to bar that claim; and
> 3) the state procedural default is an adequate and independent state ground properly foreclosing federal habeas review of the petitioner's federal claim at issue.

*Hicks*, 377 F.3d at 551 (citations omitted).  If under these standards a petitioner is shown to have procedurally defaulted his federal claims in state court, federal habeas review is barred unless the petitioner demonstrates either: "1) cause for his failure to comply with the state procedural rule and actual prejudice flowing from the violation of federal law alleged in his claim, or 2) that a lack of federal habeas review of the claim's merits will result in a fundamental miscarriage of justice."  *Id.* at 551-52 (citing *Coleman*, 501 U.S. at 750; *Murray v. Carrier*, 477 U.S. 478, 496 (1986)).

First, it is undisputed that Petitioner failed to comply with Michigan Court Rule

6.508(D)(3)[4] when he filed his post-conviction motion for relief from judgment because the motion contained Claims I.B through I.G, and Claim III, which he had not raised in his earlier direct appeal.  The second factor in determining whether Petitioner procedurally defaulted these claims is similarly satisfied.  Under this factor, the "state judgment" to be analyzed is "the last <u>explained</u> state-court judgment."  *Ylst v. Nunnemaker*, 501 U.S. 797, 805 (1991) (emphasis in original).  The last state court rendering judgment in Petitioner's state proceedings was the Michigan Supreme Court which denied leave to appeal the trial court's denial of his motion for relief from judgment for "failure to meet the burden of establishing entitlement to relief under MCR 6.508(D)."  *People v. Johnson*, 477 Mich. 947 (2006).  The Sixth Circuit has repeatedly held that identical, formulaic one-sentence orders denying relief in reliance on Michigan Court Rule 6.508(D) constitute "explained" decisions that enforce a state procedural bar to federal habeas review.  *Simpson,* 238 F.3d at 408; *accord Munson v. Kapture,* 384 F.3d 310, 314 (6th Cir. 2004);  *Burroughs*, 282 F.3d at 414.  *But see Abela v. Martin*, 380 F.3d 915, 922-23 (6th Cir. 2004) (interpreting identical order of the Michigan Supreme Court based upon Michigan Court Rule 6.508(D) as unexplained where lower state court opinion ruled on merits of state prisoner's claims).

The third factor in this analysis concerns whether the state procedural default is an adequate and independent state ground to prevent federal habeas review of the underlying federal issue.  *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).  "It is well-

---

[4]Under Michigan law, a court may not grant post-conviction relief to a defendant if, absent a showing of cause and prejudice, the post-conviction motion "alleges grounds for relief . . . which could have been raised on [direct] appeal from the conviction and sentence . . . ."  Mich. Ct. R. 6.508(D)(3).

16

established in this circuit that the procedural bar set forth in Rule 6.508(D) constitutes

an adequate and independent ground on which the Michigan Supreme Court may rely

in foreclosing review of federal claims." *Munson*, 384 F.3d at 315 (citing *Simpson*, 238

F.3d at 407-08; *Burroughs*, 282 F.3d at 410)).  It is an adequate and independent state

ground for precluding federal review because the rule was firmly established and

regularly followed at the time of Petitioner's direct appeal, and was actually followed by

the Michigan Supreme Court in this case.  *Hicks*, 377 F.3d at 557 (citation omitted).

The court concludes that Petitioner procedurally defaulted Claims I.B through I.G and

Claim III by failing to raise them on direct appeal.

## C.  Cause and Prejudice

A Petitioner seeking federal habeas review of a procedurally defaulted claim

must demonstrate cause for the default, and actual prejudice as a result of the alleged

violation of federal law before a federal habeas court will consider the merits of the

claim.  *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000) (citing *Coleman*, 501 U.S. at

750).  The only exception to this rule is when a habeas petitioner can demonstrate that

the failure to consider the claim will result in a fundamental miscarriage of justice.  *Id.*

Petitioner contends that his appellate counsel was constitutionally ineffective for

failing to raise the defaulted claims on direct appeal.  If Petitioner's position is correct,

appellate counsel's ineffectiveness may constitute cause to excuse any procedural

default.  *Murray*, 477 U.S. at 488.  Petitioner has asserted ineffective assistance of

appellate counsel as both cause for procedural default, and as an independent ground

for habeas relief in Claim II.   For both purposes, Petitioner must demonstrate that

appellate counsel's errors rose to the level of a constitutional violation of the right to

17

counsel. *Burton v. Renico*, 391 F.3d 764, 774 (6th Cir. 2004).

> In order to succeed on a claim of ineffective assistance of appellate counsel, a petitioner must show errors so serious that counsel was scarcely functioning as counsel at all and that those errors undermine the reliability of the defendant's convictions. Strategic choices by counsel, while not necessarily those a federal judge in hindsight might make, do not rise to the level of a Sixth Amendment violation.

*Id.* (quoting *McMeans v. Brigano*, 228 F.3d 674, 682 (6th Cir.2000)). Thus, Petitioner must show that the claims appellate counsel failed to raise would have succeeded on appeal. *Smith v. Robbins*, 528 U.S. 259, 285-86 (2000) (citing *Strickland*, 466 U.S. at 694).

The prejudice required under *Strickland* is very similar to the showing of prejudice required to overcome a procedural default. *Joseph v. Coyle*, 469 F.3d 441, 462-63 (6th Cir. 2006). Where, as here, a petitioner seeks to excuse his default on the ground of ineffective assistance of counsel, if he can establish *Strickland* prejudice, he will also establish prejudice necessary to overcome his procedural default. *Id.* On the other hand, where a petitioner asserting ineffective assistance of counsel as cause cannot establish *Strickland* prejudice, he necessarily fails to establish the prejudice as well as the cause necessary to overcome his procedural default. With this framework in mind, the court will now examine the failure of Petitioner's counsel to raise Claims I.B through I.G and Claim III on direct appeal.

### 1. Claim I.B - Failure to Challenge Admission of Petitioner's Statements

Petitioner argues that his counsel should have requested a "*Walker* hearing" to determine the admissibility of Petitioner's statements to police. A "*Walker* hearing" is used by Michigan courts to determine the voluntariness of a confession before allowing

18

a jury to consider the confession.  See *People v. Walker,* 374 Mich. 331 (1965).  Here,

the need for a *Walker* hearing did not arise because Petitioner denied that he made *any*

statements to police, and accused the police of fabricating the statements attributed to

him.  At the January 26, 2001 final pre-trial conference, defense counsel was careful to

put on the record that there was no need for a suppression hearing for this very reason.

Petitioner concurred on the record that the jury would determine whether he made the

statements.  Accordingly, Petitioner's claim based upon counsel's failure to hold a

*Walker* hearing would not have provided the basis for a successful appeal.

### 2.  Claim I.C - Failure to challenge admission of photo line-up

Petitioner argues that the photo array was "patently inadmissible" because no

lawyer for Petitioner was present and that his lawyer should have held a pre-trial

hearing to suppress the results of the photo line-up under *United States v. Wade*, 388

U.S. 218 (1967).  However, *Wade* involved a post-indictment corporeal lineup where the

suspect was denied counsel.  In this case, there was no live lineup, only a photo lineup

at which Petitioner was not present.  Contrary to Petitioner's assertion, there is no right

to counsel at photographic arrays.  *United States v. Ash*, 413 U.S. 300, 321 (1973).

Petitioner does not argue, and nothing in the record suggests, that the officers

employed an unfairly suggestive procedure when showing the photographs to Daniel.

Petitioner's claim that his trial counsel should have requested a *Wade* hearing would not

have provided the basis for a successful appeal.

### 3.  Claim I.D - Failure to object to prior conviction

Petitioner argues that counsel should have objected when the court read the

information during voir dire because count seven, which charged felon in possession of a firearm, informed prospective jurors that Petitioner had previously been convicted of possessing cocaine.  Petitioner asserts that this "information corroborated the entire theory of the People's case."  To the contrary, whether or not the murders were drug-related was not a pivotal issue.  Additionally, the record reflects that defense counsel stipulated only to Petitioner's status as a felon, and not to the felony for which he was convicted.  Tr. (5/16/01), p. 27.

Instead of explaining how the lack of an objection caused prejudice, Petitioner argues that his right not to testify was compromised.  He argues that a prior conviction can only be introduced to impeach if a defendant chooses to testify.  As Respondent notes, the state was required to prove the element of a prior felony conviction.  It appears that despite the parties' stipulation that only Petitioner's status as a felon would be disclosed, the information that the court read to the jury was not redacted to reflect the stipulation.  The objectionable statement occurred during voir dire and was made by the judge and not during the State's case in chief.  Tr. (5/14/01), p. 22.  The court informed that jury that the information is not evidence and that the jury must not think Petitioner is guilty simply because he was charged.  *Id.*, p. 23.

In order to show prejudice, Petitioner must show that but for the alleged errors, there is a reasonable probability the result of the proceeding would have been different.  *Byrd v. Trombley*, ___ F.3d ___, 2009 WL 3673099, *6 (6th Cir. Nov. 5, 2009).  Petitioner has not met that burden.  In his second statement to police, Petitioner admitted to drug trafficking, and that he was at the scene of the crime to complete a drug transaction.  Tr. (5/16/2001), p. 31.  Moreover, the state presented overwhelming

20

evidence to support Petitioner's convictions.  There is no reasonable probability the outcome would have been different if counsel had objected to the court's recitation of the information during voir dire.  Accordingly, Petitioner's claim based upon counsel's failure to object to the recitation of his prior conviction would not have provided the basis for a successful appeal.

### 4.  Claim I.E - Failure to excuse a juror for cause

Petitioner next argues that trial counsel was ineffective for failing to challenge a juror for cause.  Nowhere does Petitioner allege that the juror, Dr. Raid Khatib, was biased.  Petitioner speculates that because Dr. Khatib was employed at the same hospital that treated Daniel he should have been questioned about his impartiality.  Dr. Khatib disclosed that he was employed by St. John's Hospital.  Further, the trial court disclosed potential witnesses, including Pamela DeKiere, and required prospective jurors to inform the court if they knew any of them.  Dr. Khatib did not indicate that he knew Ms. DeKiere.  In order to prevail on this claim, Petitioner must show that Dr. Khatib was actually biased.  *Miller v. Francis*, 269 F.3d 609, 616 (6th Cir. 2001).  Petitioner failed to carry this burden.  Accordingly, Claim I.E would not have provided the basis for a successful appeal.

### 5.  Claim I.F - Failure to object to testimony about anonymous tip and about prejudicial information

In his next claim, Petitioner argues that trial counsel was ineffective for failing to object to testimony about the anonymous tip authorities received following the Michigan's Most Wanted broadcast.  The record shows that counsel in fact objected to the testimony about tips as hearsay and the objections were sustained.  Tr. (5/16/01), p.

21

25.  The record also reflects that at the request of defense counsel, the prosecutor made clear that the testimony was not offered for the truth of the matter asserted, but instead that the information received was part of the investigative process and explains why agents took subsequent steps that led to the identification and arrest of Petitioner. *Id.*, pp. 25-26.

Petitioner makes a similar argument about counsel's failure to object to testimony about Petitioner's Minnesota driver's license.  Again, the record shows that defense counsel objected to extraneous references to Minnesota and the objections were sustained.  *Id.*, pp. 27-29.  Petitioner failed to demonstrate that trial counsel's performance was deficient; the record only reflects that counsel performed reasonably. Accordingly, Claim I.F would not have provided the basis for a successful appeal.

### 6.  Claim I.G - Agreement to stipulate to testimony of young victim so the child would not have to testify.

In Petitioner's final claim that trial counsel was ineffective, he challenges the decision to stipulate that if Daniel Brenner were to testify, he would identify Petitioner as a participant in the shootings.

When evaluating the reasonableness of counsel's performance, a court must not indulge in hindsight.  *Strickland*, 466 U.S. at 690.  A challenge to trial counsel's tactical decisions are particularly difficult to attack.  *O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994).  A petitioner must overcome a presumption that the challenged action might be considered sound trial strategy.  *Darden v. Wainwright*, 477 U.S. 168, 185-87 (1986).

The record here couldn't be more clear, that the challenged decision was trial strategy:

22

MS. PENDERGAST [prosecutor]:  Your Honor, in terms of an identification made, there is a five-year-old witness -- five at the time, six now -- by the name of Daniel Brenner who made an identification through a photo identification.  Technically under Michigan Rule of Evidence 8.01(d) (1), in the case of People versus Malone, he has to be available for cross examination.  In this case, it's my understanding, as a matter of trial strategy, that Mr. Slameka does not want this child to come in and point out the Defendant in front of the jury.  I also would like to avoid traumatizing the child so it's my understanding that he will waive his right to cross on that and the testimony will be allowed in without his cross examination.  Is that correct?

MR. SLAMEKA [defense counsel]:  That's correct, your Honor.  Is that correct, Mr. Johnson?  We talked about this?

DEFENDANT JOHNSON: Yes, sir, we have talked about it.

MR. SLAMEKA: I was telling Mr. Johnson he has a right to confrontation of any accusers but because of the condition of the young man, he's paralyzed as a result of the gunshot, I think it would be horrible to bring that kid in and expose himself to that.  And Mr. Johnson agrees with me; is that correct, sir?

THE COURT: Is that correct, Mr. Johnson?

DEFENDANT JOHNSON: Yeah, he already went through too much of this.

THE COURT: All right. Thank you.

Tr. (5/14/01), pp. 25-27.

The parties shared an interest in sparing Daniel from further trauma.  It was not only reasonable but sound strategy to prevent a very sympathetic witness from taking the stand who would have pointed to Petitioner when asked who shot his parents.

Petitioner failed to show that counsel's performance was deficient.[5]  Accordingly, Claim

---

[5]Trial counsel defended Petitioner by arguing that he was the intruder who protested the killings and left the scene.  Given Petitioner's incriminating statements, Daniel's testimony, and Daniel's identification, it was arguably the best defense Petitioner had.

I.G would not have provided the basis for a successful appeal.

### 7.  Claim III - *Brady* Violation

In his next claim, Petitioner argues that the state improperly withheld exculpatory and impeaching evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963), by failing to disclose 1) police interviews of Sobanski and Blanchard, and 2) information about the credibility of police officer Walter Bates who allegedly participated in the investigation leading to the discovery of jewelry belonging to victim Devine at Petitioner's home.

Under *Brady*, a defendant's due process rights are violated if the government suppresses favorable evidence where the evidence is material to guilt or punishment, regardless of the good or bad faith of the prosecution.  *Strickler v. Green*, 527 U.S. 263, 280 (1999).  The Supreme Court held that "[t]here are three components of a true *Brady* violation: [t]he evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Id.* at 281-82.  The failure to disclose evidence is "material" and "prejudicial" to the defendant only when the evidence creates a reasonable probability of a different result.  *O'Hara v. Brigano*, 499 F.3d 492, 502 (6th Cir. 2007).

As discussed above, even with the Sobanski and Blanchard affidavits, Petitioner's alibi defense was implausible.  The state's alleged failure to disclose the fact that Sobanski and Blanchard had been interviewed by police does not constitute a *Brady* violation.  Petitioner does not allege that the results of the interviews were different from the substance of the affidavits.  Where a defense theory is implausible,

the failure to disclose evidence that arguably supports such an implausible theory is not a *Brady* violation. *Doan v. Carter*, 548 F.3d 449, 462 (6th Cir. 2008). This is because such evidence would not have had a significant effect on the jury if it had been disclosed. *Id.*

Petitioner's argument regarding Officer Bates similarly fails. Officer Bates did not testify at trial. The evidence regarding the discovery of Devine's ring in the potato chip can located in the ceiling of Petitioner's home was introduced by police officer Arlie Lovier. Lovier testified that he and Bates took several pieces of jewelry found in the potato chip can and the can itself was placed into evidence. Tr. (5/16/01), pp. 19-22. The information Petitioner claims to have regarding Officer Bates does not impact the credibility of Officer Lovier, who was the only one to testify regarding this evidence. Because this information about Bates would not have had a significant effect on the jury if it had been disclosed, there is no Brady violation. Accordingly, Claim III would not have provided the basis for a successful appeal.

None of the claims appellate counsel failed to raise would have provided the basis for a successful appeal. Therefore, Petitioner failed to establish prejudice under *Strickland* and Petitioner's appellate counsel was not constitutionally ineffective for failing to raise Claim I.B through Claim I.G or Claim III in the direct appeal. *See Smith,* 528 U.S. at 285-86 (to demonstrate ineffective assistance of appellate counsel, must show that the claims counsel failed to raise would have succeeded on appeal). Further, the inability to establish prejudice under *Strickland* necessarily means that Petitioner cannot establish cause and prejudice to excuse his procedural default on Claims I.B through I.G and Claim III. *Joseph,* 474 F.3d at 462-63.

25

### D.  Fundamental Miscarriage of Justice

A petitioner who is unable to show cause and prejudice may still obtain habeas review if his case fits within a narrow class of cases permitting review in order to prevent a fundamental miscarriage of justice, as when the petitioner submits new evidence showing that a constitutional violation has probably resulted in a conviction of one who is actually innocent.  *Murray,* 477 U.S. at 495-96.  A petitioner who seeks review of his underlying constitutional claims under this exception must show that, in light of new evidence, it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.  *See Schlup v. Delo,* 513 U.S. 298, 327 (1995).  Such a claim of actual innocence must be supported with new and reliable evidence that was not presented at trial.  *Id.* at 324.  Because Petitioner has not presented any new reliable evidence that he is innocent of the crimes of which he was convicted, a miscarriage of justice will not occur if the Court declines to review Petitioner's procedurally defaulted claims on the merits.  *Id.* at 316.  Petitioner is not entitled to relief on Claims I.B through I.G or Claim III under this limited exception.

### E.  Ineffective Assistance of Appellate Counsel

In Claim II, Petitioner asserts as a stand alone basis for habeas relief, that his appellate counsel was constitutionally ineffective for failing to raise what he believed were meritorious claims in his direct appeal.  As set forth in section III.C above, Petitioner cannot establish that the claims appellate counsel failed to raise would have succeeded on appeal and, therefore, cannot establish prejudice under *Strickland.* Because Petitioner cannot meet his burden to show prejudice under the *Strickland* test, the state court decisions on this issue were neither contrary to clearly established

26

federal law, nor based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  Petitioner is, therefore, not entitled to habeas relief on Claim II.

## IV.  CONCLUSION

The court **DENIES** the petition for a writ of habeas corpus.  In accordance with recently amended Rule 11(a) of the Rules Governing § 2254 Cases, 28 U.S.C. foll. § 2254, this court must issue or deny a certificate of appealability "when it enters a final order adverse to the applicant."  A certificate of appealability may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  When a district court rejects constitutional claims on the merits, the substantial showing threshold is satisfied when a petitioner demonstrates "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  When a district court denies a claim on procedural grounds, a certificate of appealability "should issue when a prisoner shows, at least, that jurists of reasons would find it debatable whether the petition states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  *Id.* at 484.

For the reasons set forth in this opinion, the court finds that reasonable jurists would not find the court's decision to deny the petition on procedural or substantive grounds debatable or wrong.  The court will, therefore, deny a certificate of appealability on all claims.

27

## V.  ORDER

The Petition for a Writ of Habeas Corpus is **DISMISSED WITH PREJUDICE.**   A

Certificate of Appealability is **DENIED** with respect to all claims.

**IT IS ORDERED.**


s/Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated:  December 1, 2009

The undersigned certifies that a copy of this document was served on the attorneys of record and Toriano Johnson by electronic means or U.S. Mail on December 1, 2009.

s/Linda Vertriest
Deputy Clerk

28